In re Thelma V. SPIRTOS, Debtor.

Thelma V. SPIRTOS, Appellant,

v.

Irene MORENO, Appellee.

BAP No. CC–92–1169–POV.
Bankruptcy No. LA84–13757–AA.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Feb. 18, 1993.

Decided May 25, 1993.

Douglas D. Kappler, Los Angeles, CA, for appellant.

Joseph L. Shalant, Los Angeles, CA, for appellee.

Before: PERRIS, OLLASON, and VOLINN, Bankruptcy Judges.

## OPINION

PERRIS, Bankruptcy Judge:

Under a marital settlement agreement, the debtor, Thelma Spirtos, assumed one-half of a judgment debt owed by her ex-husband, Dr. Basil Spirtos ("Dr. Spirtos") to the appellee, Irene Moreno. The debtor objected to Moreno's proof of claim, contending that Moreno's claim against her should be precluded or reduced by the damages she suffered because of Dr. Spirtos' breach of the settlement agreement. The debtor appeals from the bankruptcy court's order allowing Moreno's claim for one-half of the amount of the judgment. We AFFIRM the bankruptcy court's decision.

### FACTS

On April 18, 1983, Moreno, as the guardian *ad litem* for Raymond Guerna, obtained a state court medical malpractice judgment against Dr. Spirtos in the approximate amount of $826,000. The debtor was not a party to the malpractice action and was not named in the judgment. In 1985, Moreno's judgment against Dr. Spirtos was affirmed on appeal.

The debtor and Dr. Spirtos were married through April of 1983. In 1982, however, the debtor filed a petition in state court to dissolve their marriage. On July 1, 1983, the debtor and Dr. Spirtos entered into a Marriage Settlement Agreement ("MSA"), which divided their substantial liabilities and community property assets. Under the MSA, the debtor agreed, *inter alia*, to assume, pay, indemnify, and hold Dr. Spirtos harmless from several debts, including the following:

An undetermined amount not to exceed one-half of the Civil Judgment in the

case of *Moreno v. Spirtos*, Case No. C242972. Husband and wife acknowledge that the community estate is liable for the payment of the judgment ... and that each party takes the property hereunder subject to said judgment, both individually and jointly.

In addition, the agreement contemplated the sale of several community assets in order to pay certain community debts and imposed upon Dr. Spirtos several continuing obligations, including the obligation to pay spousal and child support and to pay monthly mortgage payments, taxes and insurance on properties awarded to the debtor pending the sale of certain other community assets. The MSA also provided that in the event the parties obtained an interlocutory judgment in the dissolution proceeding, the MSA would be submitted ·to the court for its approval and all executory provisions of the MSA would be incorporated in and become part of the judgment.

On December 23, 1983, the state court entered an interlocutory judgment in the dissolution proceeding ("the interlocutory judgment"). The interlocutory judgment incorporated all pertinent provisions of the MSA.[1] Pursuant to the interlocutory judgment, the debtor was awarded substantial community property. On March 2, 1984, the state court entered the final judgment of the dissolution of the marriage of Dr. Spirtos and the debtor. The debtor was represented by counsel at all phases of the dissolution proceeding, including the negotiation of the MSA.

The debtor contends that Dr. Spirtos failed to perform his obligations under the MSA in several substantial respects. The debtor contends that Dr. Spirtos' breach of the MSA caused the foreclosure or forced sale of several properties, damaged the debtor in excess of $3,000,000 and precipitated the filing of her Chapter 11 petition.

The debtor filed her voluntary Chapter 11 petition on June 28, 1984.[2] Moreno filed

---

1. All further references to the MSA refer to the agreement as incorporated into the dissolution judgment, unless the context indicates otherwise.

2. Dr. Spirtos filed a Chapter 11 petition in 1987, which was converted to Chapter 7 in 1989. Moreno pursued collection of her judgment against Dr. Spirtos and in 1989 obtained $490,-

a proof of claim against the debtor's estate in the amount of $828,576.78 plus interest and post-judgment costs. The debtor objected. The bankruptcy court initially determined that Moreno did not have a judgment lien against the debtor's property and that the debtor's property was not liable for the Moreno judgment by virtue of the fact that it was formerly community property.[3] After trial,[4] the bankruptcy court further determined that one-half of the Moreno judgment was assigned for payment by and unconditionally assumed by the debtor under the MSA. According to the court, this created a direct debtor/creditor relationship between the debtor and Moreno and the debtor, therefore, was not allowed to offset against the amounts due Moreno any damages arising from any breach of the MSA by Dr. Spirtos. The debtor filed this timely appeal from the bankruptcy court's order allowing Moreno an unsecured claim for one-half of her judgment plus interest.

## ISSUE

Whether the bankruptcy court erred in determining that Moreno's enforcement against the debtor of that portion of the judgment debt assumed by the debtor under the MSA was not precluded or affected by any breach by Dr. Spirtos of his obligations under the MSA.

076.56 from the sale of certain property owned by Dr. Spirtos.

3. The parties do not dispute that under the law as it existed prior to 1985, the community property received by the debtor in the dissolution proceeding would have been liable for the Moreno judgment by virtue of the fact that it was formerly community property. The law, however, was changed by the enactment of Cal.Civ. Code § 5120.160(a) effective January 1, 1985.

4. The debtor submitted several trial declarations detailing Dr. Spirtos' breaches of the MSA. The bankruptcy court sustained Moreno's objections to almost all of this evidence, determining that the debtor's assumption of one half of the Moreno judgment was not dependent upon Dr. Spirtos' performance or breach of the MSA.

5. The debtor also argues that any contention that the MSA created a direct debtor/creditor relationship is contrary to the court's initial

## STANDARD OF REVIEW

This appeal turns upon questions of law concerning the interpretation and effect of the MSA under applicable law. We review such questions of law de novo. See In re U.S. Financial Securities Litigation, 729 F.2d 628, 631–32 (9th Cir.1984); In re Patterson, 86 B.R. 226, 227 (9th Cir. BAP 1988).

## DISCUSSION

The debtor contends that Dr. Spirtos' breach of the MSA prevents or impairs Moreno's enforcement of the assumption provision of the MSA, which is the sole source of her liability to Moreno, for the following reasons: (1) the debtor's agreement to assume part of the Moreno judgment was conditioned upon Dr. Spirtos' performance under the MSA; and (2) the defenses or offsets that the debtor could assert against Dr. Spirtos because of his breach may be asserted against Moreno as a third party beneficiary of the MSA.[5] Moreno contends that the debtor is not entitled to rely upon any breach of the MSA by Dr. Spirtos nor offset any damages arising from such breach against sums owed Moreno because the debtor unconditionally assumed liability for one-half of the Moreno judgment, thereby creating a direct debtor/creditor relationship with Moreno.[6]

ruling on the objection to the claim and the joint pre-trial order, which indicate that the debtor did not become personally liable on the judgment. This argument misconstrues the earlier ruling and the pre-trial order. The ruling and pre-trial order essentially establish that the debtor's liability did not arise solely by virtue of the judgment against Dr. Spirtos. The liability of the debtor under the assumption in the MSA and Cal.Civ.Code § 5120.160 was not addressed.

6. Moreno also contends that the merger of the MSA into the interlocutory judgment extinguished any executory conditional provisions of the agreement, thereby replacing the future performance obligations under the MSA with the obligations imposed by the judgment and effectively eliminated any conditions or contract defenses as a barrier to the enforcement of the interlocutory judgment. Because we determine that Moreno has a statutory rather than a contractual right to enforce her claim against the debtor and that the debtor unconditionally as-

Our resolution of this appeal turns upon the parties' rights and obligations under the MSA and Cal.Civ.Code § 5120.160 (West Supp.1993) and whether the debtor's assumption of the obligation was unconditional.

### A. *Section 5120.160(a).*

■ California Civ.Code § 5120.160(a) provides that property received by a person in the division of community property is liable for a debt incurred by the person's spouse during the marriage, and the person is personally liable for the debt, if the debt was assigned for payment by the person in the division of property.[7] The parties do not dispute the bankruptcy court's determination that § 5120.160(a) applies to this attempt to enforce the debt after the effective date of the section. *See* E.R. at 227–29; *see also In re Chenich,* 87 B.R. 101 (9th Cir.BAP 1988).

■ The plain language of section 5120.160(a) imposes personal liability on a nondebtor spouse if payment of the debt is assigned to the nondebtor spouse in the division of community property. Although there is a paucity of cases construing this section, if the section is to have any meaning at all, it must necessarily confer upon creditors the right to enforce the personal liability of a nondebtor spouse to the extent the debt is assigned to that spouse for payment.

■ The debtor's reliance upon the limitations of contract principles attempts to read into this section limitations which are not there. If the debt is assigned to a person for payment, the rights to enforce the personal liability of the assignee are created by section 5120.160(a)(3) and do not depend upon principles of contract law. The assignment or assumption of a debt pursuant to a division of property and section 5120.160(a)(3) create a direct debtor/creditor relationship without regard to the rights of a creditor as a third party beneficiary of a marital settlement agreement.[8] The determinative question, therefore, is whether the debtor unconditionally assumed part of the Moreno judgment or whether the assignment of the judgment to the debtor was contingent upon some unperformed condition.

### B. *Was the assumption conditional?*

The MSA provides that one-half of the Moreno judgment is assumed by and assigned to the debtor for payment. We reject the debtor's contention that her assumption was conditioned upon Dr. Spirtos' performance under the MSA and since Dr. Spirtos breached the MSA, the assumption is not enforceable.

■ A condition is a fact, the happening or nonhappening of which creates or extinguishes a duty of performance on the part of the promisor. *E.g.,* 1 B.E. Witkin, *Sum-*

sumed one half of the Moreno judgment, we need not address the effect of such a merger on the obligations under the MSA, on Moreno's rights as a third party beneficiary or on the availability of contract defenses arising from any breach by Dr. Spirtos.

7. Section 5120.160(a) provides, in pertinent part, as follows:

Notwithstanding any other provision of this article, after division of community and quasi-community property pursuant to Section 4800:

. . . . .

(2) The separate property owned by a married person at the time of the division and the property received by the person in the division is not liable for a debt incurred by the person's spouse before or during the marriage, and the person is not personally liable for the debt, unless the debt was assigned for

payment by the person in the division of the property. . . .

(3) The separate property owned by a married person at the time of the division and the property received by the person in the division is liable for a debt incurred by the person's spouse before or during marriage, and *the person is personally liable for the debt, if the debt was assigned for payment by the person* in the division of property. (Emphasis added).

8. The debtor contends that any right that Moreno has to enforce the debtor's liability under the MSA and under the interlocutory judgment must necessarily be as a third party beneficiary of the MSA because persons who are not parties to litigation do not have the right to enforce judgments rendered in the litigation. Although the debtor may be correct that third parties may not generally enforce judgments, this argument ignores the rights granted to creditors under section 5120.160(a)(3).

*mary of California Law*, Contracts, § 721 (9th Ed.1987) (hereafter *"Witkin,* Contracts"). A condition is distinguished from a covenant or promise to perform, the breach of which will give rise to a right of action for damages, but will not necessarily extinguish the obligation of performance. *Witkin,* Contracts, § 723.

■ There are essentially three types of conditions: (1) express conditions—those that are determined by the intention of the parties as disclosed in the agreement; (2) conditions implied in fact by the interpretation of the agreement and surrounding circumstances; and (3) constructive conditions, or conditions implied by law, irrespective of the parties' intent, to avoid injustice. *See Witkin,* Contracts §§ 722, 739–741, 753, 757. Conditions are not favored and an intent to create a condition must appear expressly or by clear implication in the agreement. *See, e.g. In re Bubble Up Delaware, Inc.*, 684 F.2d 1259, 1264 (9th Cir. 1982); *In re Marriage of Hasso*, 229 Cal. App.3d 1174, 1181, 280 Cal.Rptr. 919, 923 (1991); *Langford v. Eckert*, 9 Cal.App.3d 439, 445, 88 Cal.Rptr. 429, 432 (1970).

■ There are two bases upon which courts find constructive conditions. The first is in bilateral contracts where the duties are to be performed at the same time and place, the law will ordinarily imply concurrent constructive conditions making each party's obligation dependent upon the performance by the other. *Witkin,* Contracts § 753. This test looks to whether the covenants at issue are dependent or independent, which turns upon the intention of the parties as reflected in the agreement.[9] *See Verdier v. Verdier*, 133 Cal. App.2d 325, 334, 284 P.2d 94, 99–101 (1955) (covenant in separation agreement "not to molest" spouse is not dependent upon covenant to pay support and breach of covenant not to molest will not bar action to recover support). Under another theory, in bilateral contracts for an agreed exchange, when one party has materially failed to perform his promise and the failure is excusable and therefore not a breach which would justify an action for damages, the other party's duty to perform is discharged. *See Witkin,* Contracts, § 757. Thus, failure of consideration operates as a constructive condition on the theory that it is unjust to compel one party to perform when he does not receive the other's performance and cannot recover damages on account of the other's failure to perform. *Id.*

■ The debtor's promise to pay part of the Moreno judgment is not conditional under any of these tests. The intent to condition the debtor's obligation to Moreno upon Dr. Spirtos' performance does not appear expressly in the agreement nor is there any sort of implication arising from the language or surrounding circumstances that such is the parties' intent. Although the debtor's promise to pay part of the Moreno judgment is part of the agreed exchange of property rights and obligations between the parties, there is no indication this particular promise is dependent upon the promises to pay support and make mortgage, property tax and insurance payments that Dr. Spirtos is alleged to have breached. The MSA does not require these promises to be performed at the same time or place. Given the principle that courts favor a construction of promises as independent, *see Witkin,* Contracts, § 756; *Verdier,* 284 P.2d at 100, a constructive condition does not exist on the basis that these promises are dependant.

Neither does a constructive condition exist on the basis that a failure of consideration makes it unjust to compel one party to perform when he does not receive the other's performance. While this theory may apply in an action between the debtor and Dr. Spirtos, it should not apply as between the debtor and Moreno. The debtor received substantial community property pursuant to the MSA which, at the time of the dissolution proceeding, was subject to Moreno's judgment, as the MSA acknowledged. Even though the debtor has not received all of the agreed performance

---

**9.** Because this type of constructive condition turns upon the intent of the parties as reflected in the agreement and surrounding circumstances, it is more properly characterized as an implied in fact condition rather than an implied in law or constructive condition.

from Dr. Spirtos, the debtor retains her rights to pursue Dr. Spirtos for any damages suffered by virtue of his failure to perform. Given these circumstances, there is nothing unjust about applying a portion of the community property received by the debtor to satisfy one-half of Moreno's judgment. This is especially true given that fact that nothing in the MSA made the debtor's obligation to Moreno contingent or conditional upon performance by Dr. Spirtos. Any subsequent breach by Dr. Spirtos should not be used to imply a condition.

▇▇ Because the debtor unconditionally assumed and agreed to pay one-half of the Moreno judgment, she became personally liable on the judgment pursuant to section 5120.160(a)(3). This section created a direct debtor/creditor relationship between the debtor and Moreno. Moreno's rights under this section supports the allowance of her claim against the estate.

### CONCLUSION

For the reasons set forth above, we AFFIRM the bankruptcy court's order allowing Moreno's claim for one-half of the amount of the judgment.